JoNes, Chief Judge,
concurring:
I join, with reluctance, in the conclusion reached by the majority. I have no doubt that a considerable part, if not the major portion, of plaintiff’s collections were for non-transportation fees and services. The limited distances traveled in relation to the time consumed in each of the various towns make that conclusion manifest.
Between the filing date and the effective date of the tariff, the Interstate Commerce Commission, in a letter from the Assistant Director of its traffic bureau, advised plaintiff of the necessity to show in the filed tariff schedule the charge for the “guides, lecturers and perhaps other services” as well as the charge for transportation, and asked plaintiff to advise whether it would comply promptly with these requirements as set out in section 217 (a) of the Interstate Commerce Act.
It would have seemed wise for plaintiff to have gotten in touch with a representative of the Commission, worked out a reasonable and satisfactory formula and used that as a pattern. But instead, the plaintiff chose not to file a list of its nontransportation charges but 5 months after the effective date of the tariff schedules its attorney sent the Commission a letter defending the schedules already filed. Plaintiff thus stood pat on its own method of handling, regardless of the viewpoint of the Commission which is experienced in such matters.
While this writer feels that at least half of the charges made were probably for nontransportation services, we have been given no sufficient facts on which to make a satisfactory calculation and, of course, we are not permitted to enter the field of guesswork.
Whitaker, Judge, while concurring in the majority opinion, also concurs in the above concurring opinion by Chief Judge Jones.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Lloyd Fletcher, and the briefs and argument of counsel, makes findings of fact as follows:
*534 1. Plaintiff is a District of Columbia corporation principally engaged in the business of conducting sightseeing bus tours in the District of Columbia and nearby Maryland and Virginia. It brings this suit for refund of $4,206.96 which it paid to defendant as a penalty for failure to collect transportation taxes alleged by defendant to be due from plaintiff’s customers during the period October 1, 1957 to June 30, 1958.
Although in the course of its sightseeing tours, plaintiff performs for its customers both transportation and nontrans-portation services, it charges a single lump sum price for each tour, as described below. The dispute between the parties involves the basic question of what portion of the amounts so charged plaintiff’s customers is for transportation as opposed to nontransportation services.
2. (a) During the period in question, Section 4261 of the Internal Revenue Code of 1954,[1] as amended, imposed an excise tax on the transportation of persons in the following language:
(a) Amounts paid within the United States. — There is hereby imposed upon the amount paid within the United States for taxable transportation (as defined in section 4262) [2] of any person by rail, motor vehicle, water, or air a tax equal to—
(1) 10 percent of the amount so paid before July 1, 1960; or
(2) 5 percent of the amount so paid on or after July 1, 1960.
(b) Section 6672 of the Internal Revenue Code of 1954,[3] prescribed a penalty for willful failure to collect and pay over such transportation taxes in the following language :
Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be *535 liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.
3. Insofar as pertinent to the present proceeding, the applicable Regulations promulgated by the Treasury Department read as follows:
Reg. Sec. 42.4261-2. Rate and application of tax.— (a) The tax under section 4261 is 10 percent of the amount paid for taxable transportation.
* # * * *
(d) Where a payment covers charges for nontrans-portation services as well as for transportation of a person, such as charges for meals, hotel accommodations, etc., the charges for the nontransportation services may be excluded in computing the tax payable with respect to such payment, provided such charges are separable and are shown in the exact amounts thereof in the records pertaining to the transportation charge. If the charges for nontransportation services are not separable from the charge for transportation of the person, the tax must be computed upon the full amount of the payment.
Reg. Sec. 42.4261-8. Examples of payments not subject to tax. — In addition to a payment specifically exempt under section 4263, 4292, or 4293, the following are examples of payments not subject to tax:
‡ ‡ ‡ ‡ ‡
(f) Miscellaneous charges. Where the charge is separable from the payment for the transportation of a person and is shown in the exact amount thereof on the records pertaining to the transportation payment, the tax on the transportation of persons does not apply to the following and similar charges:
‡ ‡ ‡ ‡ ‡
(4) Charges for admissions, guides, meals, hotel accommodations, and other nontransportation services, for example, where such items are included in a lump sum payment for an all-expense tour.
4. During the period in question, plaintiff operated eleven buses in the carriage of its customers on sightseeing tours. Each bus was equipped with a public address system, consisting of an amplifying device (or speaker) and a trans *536 mitting microphone located conveniently to the driver’s seat. The passenger capacity of the buses ranged from 12 to 45 passengers.
5. In the performance of any particular sightseeing tour (described in detail below), only one employee of plaintiff is aboard the bus. This single employee performs a number of services in the course of a tour. He drives the bus from place to place. He talks to passengers over the public address system while driving the bus, identifying and describing points of interest. In those places of interest where he is permitted to do so, such as the Library of Congress, the Lincoln Memorial, the National Archives Building, the Tomb of the Unknown Soldier, and the United States Supreme Court Building, the employee parks the bus, accompanies his sightseeing party into the building, or other place of interest, and conducts the party through while describing matters of general interest therein. Each of plaintiff’s nine tours contains at least two of these stops. In cases of buildings where he is not permitted to go inside with the party, such as the Smithsonian Institution, the Bureau of Engraving and Printing, the Federal Bureau of Investigation portion of the Department of Justice, the United States Capitol, and the White House (in most of which official guides are available) the employee merely conducts the members of the party to, or near, the building entrance, but he usually advises them to notice certain things within the particular building which he believes may be of especial interest to them. He keeps a continuing check on his party by taking periodic rollcalls in order to prevent losing or leaving behind a member of the party. Where requested, he assists members of the party in their camera and photographing activities. The employee considers that his function is primarily that of rendering a sightseeing guide service both on and off the bus. Depending upon the season of the year, plaintiff employs from six to ten of the type employees just described. Each such employee must hold a District of Columbia driver’s license, a Public Utilities Commission Identification Card, issued by the Hack Inspector’s Office, and a sightseeing guide license. In order to obtain these several licenses, the employee must *537 have taken and passed both written and oral examinations administered by various administrative agencies in the District of Columbia. Plaintiff’s advertising brochure, which describes its various sightseeing tours, contains the following statement:
Lectures by courteous, licensed, tour guides, over public address systems in buses with large picture windows.
6. Plaintiff sells nine basic sightseeing tours. These tours range all the way from a four-hour tour of six prominent U.S. Government buildings to a two-day tour covering 68 points of interest in the District of Columbia and nearby Virginia, including a “boat cruise” to Mount Vernon. The driving time, total elapsed time (including waiting time), mileage traveled, and basic retail charges for all services involved in each of the nine tours are as follows:

7. As stated in finding 5 above, the employees of plaintiff who drive its several sightseeing buses not only chauffeur but also talk to their passengers, the latter activity being described by plaintiff as “lecturing.” To illustrate this dual function, plaintiff conducted a portion of its public buildings tour with the trial commissioner and counsel present as members of the party. The record also contains the transcript of a tape-recorded “lecture” performed on a public buildings tour by one of plaintiff’s employees. Several of plaintiff’s drivers, as well as plaintiff’s president, testified that the aforesaid tour and lecture were typical examples of plaintiff’s activities during the period in question. An employee of the defendant, on the other hand, testified that on a sight *538 seeing tour taken by Mm several months prior to the period in question, the “lecture” by the plaintiff’s driver was not nearly so extensive in content as the transcript of the lecture referred to above. While there were differences in lecturing techniques as employed by individual drivers, the evidence preponderates that an important and significant part of the services rendered by plaintiff’s drivers consists of talking about and describing various points of interest to his sightseeing party both on and off the bus. Newly employed drivers with no previous sightseeing guide experience are given a rather intensive indoctrination course by plaintiff consisting of an apprenticeship under an experienced guide coupled with studies of historical and other sightseeing materials. As previously found, after having passed a written and oral examination, these employees have been licensed as guides by the District of Columbia. Their licenses are subject to renewal each year. On the entire record in this case, it is clearly established that plaintiff’s drivers perform substantially more services for plaintiff’s sightseeing customers than the simple transportation service of driving a bus.
8. As an interstate carrier of passengers for hire, plaintiff was, and is, subject to the provisions of Part II, Interstate Commerce Act, 49 U.S.C., Sec. 301, et seg., and to the applicable rules and regulations of the Interstate Commerce Commission. Plaintiff held a certificate of public convenience and necessity as a common carrier issued by the Interstate Commerce Commission on May 1, 1956, which is still in full force and effect. In compliance with the requirements of law, plaintiff filed with the I.C.C. on November 14, 1955, its Sightseeing Tariff No. 3, which became effective on December 15, 1955, and was in full effect during the period involved herein. Plaintiff’s said tariff provides, in pertinent part, as follows:
APPLICATION OP TARIFF
Fares shown herein are in dollars and cents and apply for the transportation of passengers, on call and demand service, over irregular routes, as follows:
*539 (a) Special Operations: Round-trip sightseeing or pleasure tours m the area represented by the District of Columbia and the portions of Virginia and Maryland within twenty (20) miles of the District of Columbia line.
sfc H* H* H*
(b) Charter Operations: Round-trip sightseeing or pleasure tours within the area represented by the District of Columbia and including the commercial zone of Washington, D.C. as defined by the Interstate Commerce Commission.
H« Hi ^ * ❖
Section 1 — Rules and Regulations Governing Special Operations
Hi Hi ❖ Hi *
Rule No. 10. Non-Transportation Services. — Special Operations. All expense or lump-sum payments for tours may be arranged to include costs such as entrance fees; guides; lecturers; hotel and motel accommodations; meals; boat trips; reservations and tickets for theaters, recitals, sports, exhibits, etc.; use of cameras; pictures, including motion pictures, and parking for automobiles; — all in addition to the transporta-[sic] fares named in Sections 3 and 4 of this tariff.
Section 2 — Identification of Tours
SPECIAL OPERATIONS
(For Transportation Fares See Section 3.)
TOUR 1 — Public Buildings. Tour includes a minimum of five Government buildings, such as White House, Supreme Court, Pan American Union, Bureau of Engraving and Printing, National Museum, Capitol, and Congressional Library, and return. The carrier reserves the right to substitute other buildings for some of those listed herein. Stop-over privileges for viewing interiors. Transportation time about y2 hour. Total elapsed transportation and non-transportation service time about 4 hours.[5]
Hi Hi Hi H* H*
*540 Section 3 — Individual Fares
(Subject to notes 1 and 2)
(For identity of tour see Section 2.)
SPECIAL OPERATIONS IN BUSES AND/OR LIMOUSINES.
(All Fares Subject to Federal Transportation Tax)
TOUR 1. $ .50 (R)
TOUR 2. .75 (R)
TOUR 3. 1.00 (R)
TOUR 4. 1.00 (R)
TOUR 5. 2.50 (R)
TOUR 6. 2.50 (R)
(x) TOUR 7. 3.00
(x) TOUR 8. 3.75
(x) TOUR 9. 1.00
Note 1. The transportation fares named herein are for continuous transportation and do not include any non-transportation service such as are mentioned in Rule 10 of Section 1.
Note 2. When stop-overs are made the tour will be continued on the next bus or limousine. _
_ (R) Denotes reduction in transportation fares.
(x) Denotes new tour.
sfc «i» ‡
Section 4 — Constructed Tours
SPECIAL OPERATIONS
For tours not shown under Sections 2 and 3 transportation fares may be constructed on the basis 6*40 per passenger mile. Mileage will be computed from the map attached hereto and made a part hereof as Section 7.
Fares are subject to FEDERAL TRANSPORTATION TAX.
The transportation rate of 6*40 per passenger mile is for continuous transportation and does not include any non-transportation services mentioned under Rule 10 of Section 1.
9. Between the filing date and the effective date of the aforesaid tariff, no objection was made thereto by anyone. However, approximately five months after the effective date, plaintiff received a letter from the Assistant Director, Bureau of Traffic, Interstate Commerce Commission, reading in pertinent part, as follows:
*541 I am informed that in connection with all of the tours for which fares are published in section 3 of the tariff, your company provides guides and lecturers, and perhaps other services. A charge in addition to the transportation fares stated in the tariff is made, although the tariff does not state such charge for those services. In this connection your attention is directed to section 217 (a) of Part II of the Interstate Commerce Act, which reads as follows:
“Every common carrier by motor vehicle shall file with the Commission, and print, and keep open to public inspection, tariffs showing all the * * * fares, and charges for transportation, and all services in connection therewith, of passengers * * * in interstate or foreign commerce between points on its own route * *
The Commission has held that this provision of the act requires a common carrier to publish in its tariffs rates and charges for all services incidental or acces-sorial to line-haul services which it performs; therefore, as to those tours described in your company’s tariff MP-I.C.C. No. 3, which are subject to the jurisdiction of this Commission, your company should publish in its tariff not only the fare for the transportation service, but also the charges for all other services rendered which are incidental or accessorial to the transportation services for which fares are now published on pages 6 and 7 of the tariff. Will you kindly advise whether your company will comply promptly with the requirements of section 217 (a) of the act as to these charges.
Plaintiff believed that its tariff was adequate and in compliance with law. Its attorney prepared and sent to the I.C.C. a letter which did not list plaintiff’s charges for non-transportation services but instead defended plaintiff’s tariff, as filed. No further communication from I.C.C. in this regard was received by plaintiff, and plaintiff’s president assumed that the Commission had accepted plaintiff’s reply as an adequate answer.
10. The transportation fares set forth in Section 3 of plaintiff’s tariff were based on a charge of 5 cents per passenger mile. In arriving at this charge, plaintiff made a study of the tariffs of several local transit companies insofar as they related to what plaintiff’s president described as “pure transportation.” From this study, coupled with trial runs of selected bus routes, plaintiff determined that the charges *542 being made by the transit companies ranged between 2 and 4 cents per passenger mile.[6] Whereupon, plaintiff arbitrarily adopted the rate of 5 cents per mile for its transportation services under the theory that if it charged something more than the transit companies, its transportation tariff would be considered fair and unobjectionable. So far as the record discloses, no effort was ever made by plaintiff to determine what its transportation charges would be under cost accounting principles applicable to the specialized field of transportation. In setting its tariff rates for transportation, plaintiff was basically concerned with whether the public could obtain the same transportation elsewhere, with no sightseeing services, for the same price or less.
11. Plaintiff’s theory as to a proper breakdown of its total fares into transportation and nontransportation charges was simply that the fares set forth in Section 3 of its I.C.C. tariff (finding 8, supra) represented the transportation portion of its total charges for the tours, the excess over such fares being the portion of the total charges allocable to non-transportation services. For example, the fare shown in Section 3 of the tariff for Tour No. 5 was $2.50, while the total amount charged, plaintiff’s customers for that tour was $11.50. Hence, for Tour No. 5 plaintiff would assign $2.50 to transportation and $9 to nontransportation. This theory was reflected in plaintiff’s books and records in the following manner. For any particular day, the number of passengers taking each tour would be multiplied by the fare set forth in the tariff as applicable to the tour taken. With regard to Tour No. 1, the resulting figure was entered in the books as “nontaxable tariff” for the reason that the Section 3 fare for that tour was below the statutory exemption of 60 cents. The total of the resulting figures for the remaining eight tours was entered in the books as “taxable tariff” and plaintiff paid the transportation taxes on that amount alone. As an illustration, the following was derived from plaintiff’s book entries for November 10,1957:

*543

Plaintiff's books and records in evidence do not reflect any breakdown of its figures into the various items claimed in the petition to be nontransportation charges, i.e., tour services, guides, lecturers (either on or off bus), meals, entry fees, waiting time, and other special services.
12. Plaintiff has applied its allocation theory described above in other connections. For example, in allowing discounts to group sightseeing parties, it confines the discount to that portion of its fare considered by it to be for nontrans-portation charges.
13. During the taxable period November 11,1957 through December 81,1957, plaintiff reported taxable transportation of $1,231.20 based on its filed tariff rates, which amount is approximately 21 percent of gross income received of $6,170.05. During the taxable period January 1, 1958 through March 31,1958, plaintiff reported taxable transportation income of $1,710.50, which amount is approximately 18 percent of the gross income of $9,807.62 received. During the taxable period from April 1,1958 through June 30,1958, plaintiff reported taxable transportation income of $9,585.35, which amount is approximately 20 percent of gross income received of $49,610.13.
14. Plaintiff did not collect from its customers, account for, or pay over to the District Director of Internal Eevenue transportation tax on any amount other than the amounts shown in Section 3 of its tariff during the period here involved. The plaintiff collected from its customers 10 percent of the amounts shown on its said tariff on all tours except Tour 1 and paid over such amounts to the District Director of Internal Eevenue as follows:
*544 1957 4th Quarter-$409. 63
1958 1st Quarter- 171. 06
1958 2d Quarter_ 958. 54
15. By registered letters dated September 19, 1956, January 18, 1957, and October 11,1957, from C. I. Fox, District Director of Internal Revenue at Baltimore, Maryland, plaintiff was advised of the Government’s position as to the basis upon which to compute its required transportation tax from charges made for transportation and nontransportation services furnished to its customers. Plaintiff also was advised to collect and remit the transportation tax in accordance with the information furnished.
The above-mentioned letters were received by plaintiff, but plaintiff being in disagreement therewith, did not compute or collect and remit the transportation tax as set forth in said letters. The pertinent advice contained in the letters is as follows:
You are advised, with respect to charges for sightseeing tours which include charges for both taxable transportation and nontaxable lecturer-guide services, that the National Office of the Internal Revenue Service has approved, the following basis upon which the tax, imposed by section 4261 of the Internal Revenue Code of 1954, should be computed:
a. Where a separate guide-lecturer is not furnished and the driver, in addition to his duties as such acts as a guide-lecturer, the entire charge is taxable, if no meals, admissions or other non-taxable services constitute a part of the tour for which the charge is made.
b. In those instances where a separate guide-lecturer is furnished, and other non-taxable expenses, such as hotel, meals and admissions, are included in a tour, the operator should deduct these costs first from the total charges, and then deduct 25% to represent separate guide-lecturer value included in the balance:
Example — A charge of $5.00 is made for a tour which includes a separate guide and a one-hour stop at a historical site. Operator pays a $.50 admission charge to the historical society.
FORMULA — Charge all-expense tour_$5. 00
Less: Cost of Admission_ . 50
4.50
75% taxable_ 3. 37
Transportation tax @10%_ .34
25% Nontaxable_ 1.13
*545 Upon careful consideration of your letters dated July 18, 1956 and August 3, 1956, together with photostatic copy titled “Transportation Fares and Transportation Tax — Construction of All-Expense Charges” setting forth your explanation and contention of what constitutes taxable and non-taxable transportation charges, it is held that the following charges for all-expense guided sightseeing tours may be excluded in computing the tax payable with respect to such payment, provided such charges are separable and are shown in the exact amounts thereof in the records maintained and pertaining to transportation charges:
ADMISSIONS, ENTRANCE EEES AND OTHEE COSTS
U.S. Capitol (guide fee)
Washington Monument (Admission)
Mount Yernon (Admission)
Boat fares to Mount Yernon (paid to another carrier)
Lunches or meals and other like or similar costs where same is included in cost of an all-expense tour.
It is. further held that the following charges are not deductible in computing the tax payable on transportation:
(I) Guide service where a separate guide lecturer is not furnished and the driver performs such duties.
(II) Gromid guide service, where the duties are more akin to that of a dispatcher, and the principal duties are performed by the driver guide-lecturer.
(III) Trade discounts — Commissions or fees paid to or received by hotels, motels, etc., from sale of all-expense guided tours.
It is also held that the applications filed with and/or decisions of the Interstate Commerce Commission do not necessarily govern the application of the tax on the transportation of persons.
You are hereby instructed to collect and remit the transportation tax in accordance with information and basis set forth above. If within thirty (30) days after the receipt of this letter you fail to comply with these instructions or submit additional clear and convincing evidence which would establish that some other basis is more reasonable in respect to your operations, this office, in accordance with the provisions of section 6672 of the Internal Revenue Code of 1954, will be com *546 pelled to assert 100% penalty against you for willful failure to collect the tax.
16. On June 22, 1959, pursuant to assessment, plaintiff paid the amount of $4,206.96 to the defendant as a 100-percent penalty for failure to collect the transportation taxes allegedly due from plaintiff’s customers for the period October 1,1957 to June 30,1958. In computing such penalty, plaintiff was allowed by the Internal Revenue Service to exclude from gross income in arriving at its transportation tax base such nontransportation charges as admissions, fees, boat fares, lunches, customer refunds, exempt transportation, charter limousine service not on an “established line” and customer parking expense where facilities of the plaintiff were not used. These “excludable” charges could only be ascertained from plaintiff’s cancelled checks and not from its books.
17. On June 25, 1959, plaintiff duly and timely filed with the District Director of Internal Revenue its claim for refund in the amount of $4,206.96. The claim was disallowed by registered mail on August 31,1959. Plaintiff timely filed its suit in this court on October 21,1959.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover, and therefore its petition is dismissed.

 26 U.S.C. Sec. 4261.

 The definition referred to has no bearing on the issue in this ease. Section 4262 is addressed to the problem, of defining zones without the United States in which the tax applies. See 26 U.S.C. Sec. 4262, as amended,

 26 U.S.C. Sec. 6672.

 The remaining eight tours offered by plaintiff are described in similar manner.

 Some of these companies also filed sightseeing tariffs on a charter basis. One of them separated the charges on its tariff between transportation and nontransportation services. The record does not disclose the method used in computing such allocations.